**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | |
|---|---|
| SAMSUNG ELECTRONICS CO., LTD. and SAMSUNG ELECTRONICS AMERICA, INC., <br><br> Plaintiffs, <br><br> -vs.- <br><br> NVIDIA CORPORATION, VELOCITY MICRO, INC. D/B/A VELOCITY MICRO, AND VELOCITY HOLDINGS, LLC, <br><br> Defendants. | Civil Action No. 3:14-cv-757-REP <br><br> **FILED UNDER SEAL** |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a),
SEVER, AND STAY**

TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

FACTUAL BACKGROUND ...................................................................................................2

    A.    Nature and Stage of the Proceeding.................................................................2

    B.    Parties..............................................................................................................3

ARGUMENT ...........................................................................................................................4

I.    THE LAWSUIT AGAINST NVIDIA SHOULD BE TRANSFERRED TO
    CALIFORNIA ...............................................................................................................4

    A.    Legal Standard ................................................................................................4

    B.    This Action Against NVIDIA Could Have Been Brought In The Northern
        District Of California ......................................................................................5

    C.    The Convenience Factors And Interests Of Justice Overwhelmingly Favor
        Transfer To The Northern District Of California ...........................................5

        1.    Samsung's Choice of Forum Is Not Entitled To Deference .......................5

        2.    It Would Be More Convenient For The Parties To Litigate In The
               Northern District of California.....................................................................8

        3.    A Transfer Would Be Most Convenient For Witnesses,
               Including Third Party Witnesses.................................................11

        4.    The Interests of Justice Weigh in Favor of A Transfer.............................15

II.    THE INFRINGEMENT CLAIMS ASSERTED AGAINST VELOCITY
    AND NVIDIA SHOULD BE SEVERED AND STAYED AS AGAINST
    VELOCITY....................................................................................................................17

    A.    Legal Standard ...............................................................................................17

    B.    Severing And Staying The Case Against Velocity Is Appropriate.......................18

CONCLUSION........................................................................................................................21

TABLE OF AUTHORITIES

Cases

*Acterna, LLC v. Adtech, Inc.*,
129 F. Supp. 2d 936 (E.D. Va. 2001) ................................................................. 6

*Affinity Labs of Texas v. Samsung Elecs. Co.*,
968 F. Supp. 2d 852 (E.D. Tex. 2013) ......................................................... 10, 15

*Afro-Lecon, Inc. v. United States*,
820 F.2d 1198 (Fed. Cir. 1987)......................................................................... 18

*Agilent Techs., Inc. v. Micromuse, Inc.*,
316 F. Supp. 2d 322 (E.D. Va. 2004) ................................................................. 7

*Augme Techs., Inc. v. Gannett Co.*, No. 3:11cv282,
2011 U.S. Dist. LEXIS 81605 (E.D. Va. July 26, 2011) ....................................... 7

*Avalonbay Cmtys., Inc. v. San Jose Water Conservation Corp.*, No. 1:07cv306,
2007 U.S. Dist. LEXIS 63773 (E.D. Va. Aug. 27, 2007)..................................... 18

*Brown Mfg. Corp. v. Alpha Lawn & Garden Equip., Inc.*,
219 F. Supp. 2d 705 (E.D. Va. 2002) ........................................................... 19, 20

*Cognitronics Imaging Sys., Inc. v. Recognition Research Inc.*,
83 F. Supp. 2d 689 (E.D. Va. 2000) .............................................................. 4, 17

*Corry v. CFM Majestic, Inc.*,
16 F. Supp. 2d 660 (E.D. Va. 1998) ........................................................ 17, 19, 20

*Gebr. Brasseler GmbH & Co. KG v. Abrasive Tech., Inc.*, No. 1:08cv1246,
2009 U.S. Dist. LEXIS 25926 (E.D. Va. Mar. 27, 2009) ....................................... 5

*Gemalto S.A. v. HTC Corp.*, No. 6:10cv561,
2011 U.S. Dist. LEXIS 133612 (E.D. Tex. Nov. 18, 2011) ................................... 10

*GTE Wireless, Inc. v. Qualcomm, Inc.*,
71 F. Supp. 2d 517 (E.D. Va. 1999) ......................................................... 6, 7, 17

*In re Genentech, Inc.*,
566 F.3d 1338 (Fed. Cir. 2009)........................................................................... 8

*In re Phillips, Beckwith & Hall*,
896 F. Supp. 553 (E.D. Va. 1995) ..................................................................... 18

*Jaffé v. LSI Corp.*,
874 F. Supp. 2d 499 (E.D. Va. 2012) .............................................................. 4, 8

*Johnson v. DePuv Orthopaedics, Inc.*, No. 3:12cv2274,
    2012 U.S. Dist. LEXIS 141336 (D.S.C. 2012) ...................................................................... 18

*Koh v. Microtek Int'l, Inc.*,
    250 F. Supp. 2d 627 (E.D. Va. 2003) ............................................................................. *passim*

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936) ........................................................................................................... 2, 17

*LG Elecs. Inc. v. Advanced Creative Computer Corp.*,
    131 F. Supp. 2d 804 (E.D. Va. 2001) ...................................................................................... 19

*Lugus IP v. Volvo Car Corp*, No. 3:11-cv-811-HEH,
    2012 WL 1715983 (E.D. Va. May 15, 2012) ........................................................................... 18

*Lycos, Inc. v. TiVo, Inc.*,
    499 F. Supp. 2d 685 (E.D. Va. 2007) ............................................................................... 5, 7, 8

*Mobil Oil Corp. v. W.R. Grace & Co.*,
    334 F.Supp. 117 (S.D. Tex. 1971) ........................................................................................... 20

*NanoEnTek, Inc. v. Bio-Rad Labs., Inc.*, No. 2:11-cv-427,
    2011 U.S. Dist. LEXIS 138535 (E.D. Va. Dec. 2, 2011) ................................................. 5, 6, 7

*Neil Bros. Ltd. v. World Wide Lines, Inc.*,
    425 F. Supp. 2d 325 (E.D.N.Y. 2006) ................................................................................... 5, 6

*Rockstar Consortium US LP v. Samsung Elecs. Co.*, No. 2:13-CV-00894,
    2014 U.S. Dist. LEXIS 89552 (E.D. Tex. July 1, 2014) ......................................................... 10

*Samsung Elec. Co. v. Rambus, Inc.*,
    386 F. Supp. 2d 708 (E.D. Va. 2005) ............................................................................... 4, 5, 8

*Sehler v. Prospect Mortg., LLC*, No. 1:13cv473,
    2013 U.S. Dist. LEXIS 132123 (E.D. Va. Sept. 16, 2013) ..................................................... 18

*Shared Memory Graphics LLC v. Apple Inc.*, No. 5:09CV5128,
    2010 U.S. Dist. LEXIS 134909 (W.D. Ark. May 27, 2010) ................................................... 10

*Steel Erectors, Inc. v. J.A. Jones Constr. Co.*,
    865 F.2d 255, 1988 U.S. App. LEXIS 16385 (4th Cir. 1988) ................................................ 18

*Stewart Org., Inc. v. Ricoh Corp.*,
    487 U.S. 22 (1988) ..................................................................................................................... 4

*Summer Rain v. Donning Co. Publishers*, *Inc.*,
    964 F.2d 1455 (4th Cir. 1992) ................................................................................................. 17

*Telepharmacy Solutions, Inc. v. Pickpoint Corp.*,
    238 F. Supp. 2d 741 (E.D. Va. 2003) ......................................................................... 5, 15, 16

*Van Dusen v. Barrack*,
    376 U.S. 612 (1964) ..................................................................................................... 5

*Verosol B.V. v. Hunter Douglas, Inc.*,
    806 F. Supp. 582 (E.D. Va. 1992) ............................................................................... 6

*Williford v. Armstrong World Indus.*,
    715 F.2d 124 (4th Cir. 1983) ...................................................................................... 18

## Statutes

28 U.S.C. § 1391(b)(1) ....................................................................................................4

28 U.S.C. § 1404(a) ......................................................................................................1, 4

Virginia Code § 18.2-216 ..............................................................................................16

Virginia Code § 59.1-68.3 .............................................................................................16

Defendants submit this memorandum in support of their motion for a transfer of venue pursuant to 28 U.S.C. § 1404(a), to sever the case and to stay, filed on January 12, 2015.

## INTRODUCTION

The case between NVIDIA Corporation ("NVIDIA") and Plaintiffs Samsung Electronics Co., Ltd. ("SEC") and Samsung Electronics America, Inc. ("SEA") (together, "Samsung") belongs in the Northern District of California.  The case has no meaningful connections with the Eastern District of Virginia.  Samsung is not based in Virginia.  NVIDIA is not based in Virginia.  The accused products were not designed or developed here, nor are they manufactured in Virginia.  And there are no known witnesses in Virginia.  In contrast, NVIDIA is based in the Northern District of California, where it designs and develops the accused products (all of them).  Its key witnesses—which would number almost twenty based on the varied nature of the asserted patents—are all located in the Northern District of California.  NVIDIA's documents are located in the Northern District of California.  Two inventors are located in the Northern District of California as are inventors of relevant prior art.  And two third parties, Taiwan Semiconductor Manufacturing Company, Limited and ARM, Inc., who are involved in the design and manufacture of certain of the accused integrated circuits, have offices in the Northern District of California, but none in the Eastern District of Virginia.  There is no factual scenario where it would be more convenient to litigate this case in the Eastern District of Virginia over the Northern District of California.

In an attempt to manufacture a connection with this District, Plaintiffs sued Velocity Micro, Inc. d/b/a Velocity Micro (█████████████████████████████████████ █████████████████████████), and Velocity Holdings, LLC ("Velocity Holdings") (collectively "Velocity")—for infringement of eight patents.  Velocity Holdings is a ████ ███ ███████ company that sells certain NVIDIA products and that does have a presence in Virginia.

Of the eight (8) patents asserted against Velocity, however, six (6) are also asserted against NVIDIA and the claims against Velocity are based on Velocity's use or sale of the allegedly infringing NVIDIA products.  But Velocity has never sold the NVIDIA products accused of infringing some of those patents.  Samsung's less than diligent rush to create some connection to Virginia does not end there.  Of the remaining two (2) patents asserted solely against Velocity, Velocity has never sold the product accused of infringing the first of those patents.  The second patent asserted solely against Velocity involves computer cases which Velocity neither designs nor manufactures.  In the last year, the accused products related to the two patents asserted only against Velocity have generated less than ████ of revenue for Velocity.  In short, the claims against Velocity are remarkably thin and peripheral to the claims against NVIDIA.  And for the six patents asserted against both defendants, the adjudication of the claims against NVIDIA will be dispositive of the claims against Velocity.[1]

Under these circumstances, courts in this district routinely transfer actions against the main defendant (NVIDIA) to the forum which has the relevant evidence and sources of proof (the Northern District of California), and sever and stay the claims against the secondary defendants (Velocity) until the action in the proper forum is adjudicated.  This case deserves the same treatment.

## FACTUAL BACKGROUND

### A.    Nature and Stage of the Proceeding

---

[1]   In this motion, NVIDIA asks that the litigation involving Velocity be severed from the litigation against NVIDIA, and remain in the Eastern District of Virginia but be stayed.  *See Landis v. N. Am. Co.*, 299 U.S. 248, 254-5 (1936) ("The power to stay proceedings is incidental to the power inherent in every court to control the disposition of causes on its docket with economy of time and effort for itself, for counsel, and for the litigants.").

On November 4, 2014, Plaintiffs Samsung Electronics Co., Ltd. ("SEC") and Samsung Electronics America, Inc. ("SEA") filed a complaint against NVIDIA and Velocity Micro, Inc. d/b/a Velocity Micro, and Velocity. On December 19, 2014, Samsung filed its First Amended Complaint (hereinafter "Amend. Compl.").

Samsung alleges infringement of U.S. Patent Nos. 5,860,158 ("the '158 Patent"); 6,282,938 ("the '938 Patent"); 6,287,902 ("the '902 Patent"); 6,819,602 ("the '602 Patent"); 8,252,675 ("the '675 Patent"); and 6,804,724 ("the '724 Patent") against both NVIDIA and Velocity. Samsung also alleges infringement of U.S. Patent Nos. 7,073,054 ("the '054 Patent") and 5,777,854 (the '854 Patent") against Velocity; and false advertising against NVIDIA.

### B.    Parties

SEC is a corporation organized under the laws of Korea with its principal place of business located at 416 Maetan-3dong, Yeongtong-gu, Suwon-City, Gyeonggi-do, Korea 443-742. (Amend. Compl. ¶ 1.) SEA is a corporation organized and existing under the laws of the state of New York with its principal place of business in Ridgefield Park, New Jersey and is a wholly-owned subsidiary of SEC. (Amend. Compl. ¶ 2.) Neither SEC nor SEA have their headquarters or their principal place of business in Virginia.

NVIDIA is a Delaware corporation with its headquarters located at 2701 San Tomas Expressway, Santa Clara, California 95050. (Amend. Compl. ¶ 3.) NVIDIA has been continuously operating in the Santa Clara area since 1993, when the Company was founded there. (Declaration of Stephanie Luck, ¶ 2 [hereinafter Luck Decl.].)

Velocity Micro, Inc. is a Virginia corporation.  (Declaration of Randall Copeland, ¶ 2 [hereinafter Copeland Decl.].)

3

███   (*Id.*)  Velocity Holdings is a limited liability corporation organized and existing under the laws of Virginia with its principal place of business located at 835 Grove Rd. Midlothian, Virginia 23114.  (Amend. Compl. ¶ 5.)  Velocity Holdings has ███████  and less than ██ of annual revenue.  (Copeland Decl. at ¶ 5.)

## ARGUMENT

### I. THE LAWSUIT AGAINST NVIDIA SHOULD BE TRANSFERRED TO CALIFORNIA

#### A. Legal Standard

"For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought …."  28 U.S.C. § 1404(a).  Section 1404(a) imbues the district court with discretion to "adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'"  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).  The moving party bears the burden of proving that the facts warrant a transfer of venue.  *Samsung Elec. Co. v. Rambus, Inc.*, 386 F. Supp. 2d 708, 715 (E.D. Va. 2005) (granting transfer); *see Cognitronics Imaging Sys., Inc. v. Recognition Research Inc.*, 83 F. Supp. 2d 689, 696 (E.D. Va. 2000) (same).  When determining whether to grant a motion to transfer venue, district courts follow a two-step inquiry.  First, section 1404(a) directs the court to determine whether the civil action could have been brought in the proposed forum.  *Jaffé v. LSI Corp.*, 874 F. Supp. 2d 499, 502 (E.D. Va. 2012).  Second, the court considers:  (1) the plaintiff's choice of forum; (2) the convenience of the parties; (3) access to evidence; (4) the convenience of the witnesses, including third-party witnesses; and (5) the interest of justice.  *Rambus*, 386 F. Supp. 2d at 716 (referring to the aforementioned factors as

the "principal factors") (citing *Koh v. Microtek Int'l, Inc.*, 250 F. Supp. 2d 627, 633 (E.D. Va. 2003)).

**B.      This Action Against NVIDIA Could Have Been Brought In The Northern District Of California**

Samsung could have brought its claims against NVIDIA in the Northern District of California because NVIDIA is a resident of California.  *See* 28 U.S.C. § 1391(b)(1).  A corporation resides, for purposes of venue, "'in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced.'"  *NanoEnTek, Inc. v. Bio-Rad Labs., Inc.*, No. 2:11-cv-427, 2011 U.S. Dist. LEXIS 138535, at *4 (E.D. Va. Dec. 2, 2011) (citation omitted).  NVIDIA has its principal place of business in Santa Clara, California and is subject to personal jurisdiction, and resides, in California.  *See id.* (finding that a corporate defendant is subject to personal jurisdiction where it has its principal place of business and that venue is proper in that state).  Thus, the case against NVIDIA could have (and should have) been brought in the Northern District of California at the outset.

**C.      The Convenience Factors And Interests Of Justice Overwhelmingly Favor Transfer To The Northern District Of California**

**1.      Samsung's Choice of Forum Is Not Entitled To Deference**

Samsung's choice of forum is entitled to *no* deference because the Eastern District of Virginia is neither Samsung's home forum nor does the cause of action have a substantial connection to this District.  It is well-settled that "'if a plaintiff chooses a foreign forum and the cause of action bears little or no relation to that forum, the plaintiff's chosen venue is not entitled to such substantial weight.'"  *Rambus*, 386 F. Supp. 2d at 716 (quoting *Telepharmacy Solutions,*

*Inc. v. Pickpoint Corp.*, 238 F. Supp. 2d 741, 743 (E.D. Va. 2003)).[2]  And "if there is little

connection between the claims and this judicial district, that would militate against a plaintiff's

chosen forum and weigh in favor of transfer to a venue with more substantial contacts." *Koh*,

250 F. Supp. 2d at 635.

The Eastern District of Virginia is not Samsung's home forum.  SEC is a Korean

company with no known facilities, personnel, or other relevant contacts with the Eastern District

of Virginia.  Its principal place of business is located at 416 Maetan-3dong, Yeongtong-gu,

Suwon-City, Gyeonggi-do, Korea 443-742.  SEC has its only United States office in

Washington, D.C. (staffed for governmental relations functions), which is not located in the

Eastern District of Virginia.  SEA is a New York corporation with its principal place of business

in New Jersey.  SEA is registered to conduct business in Virginia but it is "hardly … necessary

to detail that product sales to a forum far from entitle a party to substantial deference in its choice

of venue." *NanoEnTek*, 2011 U.S. Dist. LEXIS 138535, at *7.  Indeed, this appears to be the full

---

[2]  *See, e.g.*, *Gebr. Brasseler GmbH & Co. KG v. Abrasive Tech., Inc.*, No. 1:08cv1246, 2009 U.S. Dist. LEXIS 25926, at *6 (E.D. Va. Mar. 27, 2009) ("GBL brought this suit in Virginia, not its home forum, and therefore its choice of venue is entitled to minimal deference."); *Lycos, Inc. v. TiVo, Inc.*, 499 F. Supp. 2d 685, 692 (E.D. Va. 2007) ("Virginia is not the home forum of Lycos, which has its principal place of business in Massachusetts."); *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 333-34 (E.D.N.Y. 2006) (holding that "plaintiff's choice of forum will not be afforded the significant weight that this factor is typically assigned" because Plaintiff did not reside in New York, its chosen forum); *Koh*, 250 F. Supp. 2d at 638  (holding that "close geographic proximity and minimal ties to Virginia [were] not alone sufficient to render the Eastern District of Virginia [the plaintiffs'] home forum because they [were] domiciled in Maryland"); *Acterna, LLC v. Adtech, Inc.*, 129 F. Supp. 2d 936, 939 (E.D. Va. 2001) ("Plaintiff's choice of forum is not entitled to substantial weight because the Eastern District of Virginia is not Plaintiff's home forum but a foreign forum."); *GTE Wireless, Inc. v. Qualcomm, Inc.*, 71 F. Supp. 2d 517, 519 (E.D. Va. 1999) ("[T]he Eastern District of Virginia is not Plaintiff's home forum and thus Plaintiff's choice of forum will not be given dispositive deference"); *Verosol B.V. v. Hunter Douglas, Inc.*, 806 F. Supp. 582, 593 (E.D. Va. 1992) (noting that neither plaintiff was suing in its home forum).

extent of SEA's connection to this District.  The Eastern District of Virginia is not the home forum for either SEC or SEA.

Putting aside Samsung's minimal ties to the Eastern District of Virginia, the cause of action lacks a substantial connection to this District.  Samsung alleges that NVIDIA conducts business in Virginia through online sales and advertisements directly to consumers and through product sales by NVIDIA's distributors and resellers.  (Amend. Compl. ¶ 20.)  But the majority of NVIDIA's design and manufacturing of the allegedly infringing products occurs in the Northern District of California; none of it occurs in Virginia.  (Declaration of Richard Calderwood, ¶ 6 [hereinafter Calderwood Decl.].)  This Court has expressly held that "[m]ere sales and marketing activity does not entitle [a plaintiff's] choice of forum to substantial weight when none of the infringing products were developed or produced in this District." *NanoEnTek*, 2011 U.S. Dist. LEXIS 138535, at *9.  Instead, it is well-settled that sales do not constitute a "substantial connection" to the forum, as a defendant manufacturer would "likely have this same contact with every other state in this nation." *Lycos, Inc.*, 499 F. Supp. 2d at 692-93 (emphasizing that because sales were not unique to Virginia, then it did not constitute a substantial connection to the forum state and granting motion to transfer); *Agilent Techs., Inc. v. Micromuse, Inc.*, 316 F. Supp. 2d 322, 327 n.3 (E.D. Va. 2004) (same); *NanoEnTek*, 2011 U.S. Dist. LEXIS 138535, at *8-10 (same).

This Court recently held that "[w]hether the Defendants sold or offered for sale their allegedly infringing products or services in this district is of little import:  sales activity alone does not establish a substantial connection to the forum." *Augme Techs., Inc. v. Gannett Co.*, No. 3:11cv282, 2011 U.S. Dist. LEXIS 81605, at *7-8 (E.D. Va. July 26, 2011) (rejecting plaintiff's argument that defendants had a "strong connection" to the Eastern District of Virginia

simply because their allegedly infringing products were sold or offered for sale, and granting motion to transfer patent infringement case).  In fact, this Court has held that the locus of an infringement case is where the accused products are designed, developed, or manufactured.  *See, e.g.*, *GTE Wireless*, 71 F. Supp. 2d at 519  (transferring the case to California where "the central issues concerning the accused activity revolve around the cellular phones which are designed and manufactured in San Diego").

The locus of this case is California.  Samsung's choice of forum is entitled to no deference.

### 2.    It Would Be More Convenient For The Parties To Litigate In The Northern District of California

It would be more convenient for the parties to litigate this case in the Northern District of California.  Courts consider the convenience of the parties, including "the 'ease of access to sources of proof, the cost of obtaining the attendance of witnesses, and the availability of compulsory process.'"  *Lycos, Inc.*, 499 F. Supp. 2d at 693 (quoting *Rambus*, 386 F. Supp. 2d at 717 n.13).  These factors demonstrate that the Northern District of California is the more convenient venue to litigate this dispute.

"'In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer.'"  *Jaffé*, 874 F. Supp. 2d at 504-05 (quoting *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009)).  Accordingly, this Court recognizes that, "it is permissible to infer, absent any contrary evidence from the non-movant, that witnesses are located at or near the center of the allegedly infringing activities and that witnesses involved in the design and manufacture of the accused [technology] are material."  *Koh*, 250 F. Supp. 2d at 636-37.

NVIDIA is headquartered in the Northern District of California and has been operating continuously in the Santa Clara area since the Company was founded in 1993; Santa Clara is the

only home NVIDIA has ever had.  (Luck Decl. at ¶ 2.)  Consequently, the design, development, and manufacture of the accused products occurs primarily in the Northern District of California.  (*Id.* at ¶¶ 8-10.)  The majority of NVIDIA's employees are involved with some aspect of engineering, sale, or marketing of NVIDIA's graphics processing units ("GPUs"), systems on a chip ("SOCs"), and graphic cards.  (*Id.* at ¶ 6.)  As of November, 2014, NVIDIA had approximately 9,100 U.S. employees.  (*Id.* at ¶ 7.)  More than half—over 4,580—work at NVIDIA's Santa Clara headquarters.  (*Id.*)  NVIDIA also has several groups that are involved with the engineering of its graphics processing and related technology.  (*Id.* at ¶ 8.)  The vast majority—over 80% of the employees in these groups—work at NVIDIA's Santa Clara headquarters.  (*Id.* at ¶ 10.)

NVIDIA has a very small regional office located in Charlottesville, Virginia, in the Western District of Virginia.  (Declaration of David Luebke, ¶ 3 [hereinafter Luebke Decl.].)  Three (3) NVIDIA employees work there.  (*Id.* at ¶ 4.)  NVIDIA also has nine (9) employees who work from home and reside in Virginia.  (*Id.* at ¶ 6.)  None of the twelve (12) NVIDIA employees located in Virginia do any substantive work related to the design, development, manufacture, marketing, or financial reporting for the accused products related to Samsung's allegations.  (*Id.* at ¶¶ 5, 7.)  None of the NVIDIA employees in Virginia has ever sold any of the accused devices.  (*Id.*)  Indeed, as discussed below, it appears that all of NVIDIA's relevant witnesses are located in Santa Clara, California.

Moreover, most—if not all—relevant documentation is stored and maintained in the Santa Clara headquarters, as are the resources for obtaining such documentation.  (Declaration of Philip Decker, ¶ 8 [hereinafter Decker Decl.].)  No relevant evidence or documents are stored or maintained in Virginia.  (*Id.*)  As of November 2014, NVIDIA's U.S. IT department comprised

approximately 178 employees; over 92% of those employees work at NVIDIA's Santa Clara headquarters in the Northern District of California.  (Luck Decl. at ¶ 11.)  Pre-trial proceedings and trial in Northern California would be far more convenient and less disruptive to the NVIDIA IT organization than litigation in Virginia.  (Decker Decl. at ¶ 10.)

Finally, it will likely be easier for Plaintiff SEC to litigate this case in the Northern District of California than in the Eastern District of Virginia given the difference in travel distance from Korea to California (5,964 miles) and Korea to Virginia (7,129 miles).  In fact, SEC has moved to transfer cases to the Northern District of California in recent years arguing that the venue would be more convenient for it.[3]  In granting SEC's motion to transfer to the Northern District of California, the court in *Affinity Labs of Texas v. Samsung Electronics Co.*, held that although SEC's place of incorporation and principle place of business are outside of the Northern District of California, "they have facilities there that employ a large number of individuals."  968 F. Supp. 2d 852, 855 (E.D. Tex. 2013).  Indeed, Samsung Research America—a wholly owned subsidiary of SEC—has its headquarters in the Northern District of California in San Jose, California.  And Samsung Semiconductor Incorporated—also a wholly owned subsidiary of SEC and allegedly the world's largest designer and manufacturer of memory and logic semiconductors—has built a 1.1 million square foot research and development headquarters in San Jose, California.  Because some of the patents in this case relate to semiconductors, it is possible/probable that relevant Samsung witnesses are located in the Northern District of California.

---

[3]  *See, e.g.*, *Rockstar Consortium US LP v. Samsung Elecs. Co.*, No. 2:13-CV-00894, 2014 U.S. Dist. LEXIS 89552 (E.D. Tex. July 1, 2014); *Gemalto S.A. v. HTC Corp.*, No. 6:10cv561, 2011 U.S. Dist. LEXIS 133612 (E.D. Tex. Nov. 18, 2011); *Shared Memory Graphics LLC v. Apple Inc.*, No. 5:09CV5128, 2010 U.S. Dist. LEXIS 134909, at *7-10 (W.D. Ark. May 27, 2010).

In sum, the vast majority (if not all) of the likely sources of proof, including testifying witnesses (discussed further below) and documentation for the accused products, are located in NVIDIA's offices in the Northern District of California. None of the likely sources of proof are in the Eastern District of Virginia. The Northern District of California would be much more convenient than the Eastern District of Virginia for the parties to obtain the testimony and documentary evidence important to this case.

### 3. A Transfer Would Be Most Convenient For Witnesses, Including Third Party Witnesses

The convenience of the witnesses, including third party witnesses, weighs heavily in favor of transfer. Although this case is in its early stages, NVIDIA has preliminarily identified 17 individuals who may be called to testify at trial about the subject matter of the six patents NVIDIA is accused of infringing, including sales and marketing of the accused products. The large number of potential witnesses is driven, in part, by the varied and unrelated nature of the six asserted patents, which range from semiconductor manufacturing to the design and operation of integrated circuits and computer memory. NVIDIA may need more than one fact witness per patent given the complexity of the claims. And, with one exception, ***every single*** one of those witnesses is in Santa Clara. (Calderwood Decl. at ¶¶ 7-13.) The only exception is one witness who works in Oregon. (*Id.* at ¶ 7.) No anticipated witnesses are in Virginia. (*Id.* at ¶ 14.)

| Witness | Title | Patent | Location |
|---|---|---|---|
| Ashfaq Shaikh | Senior Director of Engineering (IC-Interface) | 6,819,602 | Santa Clara, CA |
| Alok Gupta | Senior Hardware Engineer | 6,819,602<br><br>6,262,938 | Santa Clara, CA |
| Barry Wagner | Director of Technical Marketing | 6,262,938 | Santa Clara, CA |
| John Hu | Director of Advanced Technology | 6,287,902 & 8,252,675 | Santa Clara, CA |

| Tyvis Cheung | Senior Manager of Display ASIC and Architecture | 6,804,724 | Santa Clara, CA |
|---|---|---|---|
| Frans Sijstermans | Senior Director of Multimedia ASIC and Architecture | 6,804,724 | Santa Clara, CA |
| Yuan Cao | Director, GPU Software | 6,804,724 | Santa Clara, CA |
| Subhash Gutti | Senior System Software Engineer | 6,804,724 | Santa Clara, CA |
| David Stears | Senior ASIC Engineer | 6,804,724 | Santa Clara, CA |
| Marc Delvaux | Principal Architect of Mobile Systems | 5,860,158 | Santa Clara, CA |
| Darrell Boggs | Senior Director of CPU Architecture and Senior Distinguished Engineer | 5,860,158 | Oregon |
| Shailander Chaudhry | Principal Engineer | 5,860,158 | Santa Clara, CA |
| Lacky Shah | Senior Director of Architecture | 5,860,158 | Santa Clara, CA |
| Jack Choquette | Senior Distinguished Engineer | 5,860,158 | Santa Clara, CA |

(*Id.* at ¶¶ 7-11.)

NVIDIA has also identified two employees, Jeff Fisher, the Senior Vice President of the Gaming Business Unit and Jay Puri, the Executive Vice President of the Worldwide Field Operations, who may testify about Sales and Marketing of NVIDIA's GPUs.  (*Id.* at ¶ 12.) NVIDIA has identified Deepu Talla, the Vice President and General Manager of the Tegra Group, who may testify regarding the sales and marketing for the Tegra business unit.  (*Id.* at ¶ 13.)  All three of these employees are located in Santa Clara, California.  (*Id.* at ¶¶ 12-13.)

It would be more convenient and less expensive for these witnesses to travel the 7.3 mile distance from NVIDIA's Santa Clara headquarters to the San Jose Courthouse than the 2,879 miles to the Richmond Courthouse.  (*Id.* at ¶ 14.)  There are no known party or non-party witnesses located in the Eastern District of Virginia or within 100 miles of the Richmond Courthouse.  (*Id.*)  Thus, beyond having to spend extra time away from their commercial

responsibilities, traveling to Richmond will require all witnesses to incur travel, meal, and lodging expenses, while these expenses would be greatly reduced if this case is transferred to the Northern District of California, where the vast majority of witnesses are located.

Transferring the case to the Northern District of California would also be more convenient for third party witnesses. Specifically, employees of Taiwan Semiconductor Manufacturing Company, Limited ("TSMC") are likely to be third party witnesses in this litigation. (*Id.* at ¶ 15.) TSMC owns and operates the semiconductor manufacturing foundry where certain of the accused products are manufactured, and at least the '675 and '902 patents are directed squarely at semiconductor manufacturing processes. NVIDIA employees work with TSMC employees to help design and improve fabrication processes. TSMC has its headquarters and main operations located in the Hsinchu Science and Industrial Park in Hsinchu, Taiwan, (*id.* at ¶ 16), but it also has a corporate office located at 2585 Junction Avenue, San Jose, CA 95134, (*id.* at ¶ 17). It would likely be more convenient for TSMC's personnel to be involved in litigation in the Northern District of California, where it has a corporate office, than in the Eastern District of Virginia. (*Id.* at ¶ 18.)

Employees of third party ARM, Inc., which designs central processing units ("CPUs"), buses, and cache controllers that are used in some of the accused products, specifically the SoCs, are also likely to be witnesses in this litigation. (*Id.* at ¶ 19.) ARM's main regional office is located at 150 Rose Orchard Way San Jose, California 95134. (*Id.* at ¶ 20.) And while most of ARM's technical employees are located in Austin, Texas, it would likely be more convenient for ARM'S personnel to be involved in litigation in the Northern District of California, where ARMs' Main Regional Office is located, than in the Eastern District of Virginia, where ARM has no relevant presence. (*Id.* at ¶ 21.)

The location of the inventors of the patents at issue also favors transfer.  None of the inventors of the asserted patents are located in Virginia; they are located in either California or Korea.

| Inventor | Patent | Location |
|---|---|---|
| Yet-Ping Pai | 5,860,158 | Milpitas, CA |
| Le Trong Nguyen | 5,860,158 | Monte Sereno, CA |
| Noare Jung-Bae Lee | 6,262,938 | Korea |
| Choong-Sun Shin | 6,262,938 | Korea |
| Dong-yang Lee | 6,262,938 | Korea |
| Do-hyung Kim | 6,287,902 | Korea |
| Seong-Young Seo | 6,819,602 | Korea |
| Jung-Bae Lee | 6,819,602 | Korea |
| Byong-Mo Moon | 6,819,602 | Korea |
| Jongwon Lee | 8,252,675 | Korea |
| Boun Yoon | 8,252,675 | Korea |
| Sang Yeob Han | 8,252,675 | Korea |
| Chae Lyoung Kim | 8,252,675 | Korea |
| Seung-Gi Shin | 6,804,724 | Korea |

(*See* Amended Compl. Exhibits A-F.)  In other words, two of the inventors of the patents at issue are located in the Northern District of California and the rest are all located in Korea, which is closer in distance to the Northern District of California than to the Eastern District of Virginia, and accessible by a direct flight.  The convenience of litigating in the Northern District of California is plain.

The location of the inventors of relevant prior art also weighs in favor of transfer.  For example, Le Trong Nguyen, Derek Lentz, Yoshiyuki Miyayama, Sanjiv Garg, Yasauki

Hagiwara, Johannes Wang, and Te-Li Lau are all inventors of prior art relevant to the '158 patent. (Declaration of Jessica Phillips, ¶¶ 2-3 [hereinafter Phillips Decl.] & Exs. A, B.) They are all located in Northern California. (*Id.* at ¶¶ 4-10.) Additionally, Robert Johnston and Srinivasan Rajappa are the inventors of U.S. Patent No. 6,378,082, which is relevant prior art to the '602 patent. (*Id.* at ¶ 11 & Ex. C.) They are both located in Northern California as well. (*Id.* at ¶¶ 12-13.)

Finally, as noted, it may very well be easier and less expensive for Samsung's own witnesses to travel to California, as opposed to Richmond given that SEC is a Korean Company and two of its wholly-owned subsidiaries are located in the Northern District of California and have personnel located there. *See Affinity Labs*, 968 F. Supp. 2d at 855. The convenience of the Northern District of California forum for all witnesses strongly favors transfer.

### 4. The Interests of Justice Weigh in Favor of A Transfer

The interests of justice weigh in favor of transferring this case to the Northern District of California. The interest of justice factor includes consideration of the "pendency of a related action, the court's familiarity with the applicable law, docket conditions, access to premises that might have to be viewed, the possibility of unfair trial, the ability to join other parties, and the possibility of harassment." *Koh*, 250 F. Supp. 2d at 639. Another relevant factor is the extent to which plaintiff has engaged in forum shopping for perceived tactical advantage, which may be especially pronounced in cases that "have no real nexus to the district." *See, e.g.*, *Telepharmacy Solutions*, 238 F. Supp. 2d at 743-44 ("The 'rocket docket' certainly attracts plaintiffs, but the Court must ensure that this attraction does not dull the ability of the Court to continue to act in an expeditious manner.") (citation omitted).

This factor favors transfer. None of the real parties in interest—Samsung or NVIDIA— have any relevant ties to the Eastern District of Virginia. Velocity appears to have been named

in this lawsuit for no reason other than to artificially manufacture a connection here. Samsung sued Velocity, but not NVIDIA, for infringement of the '054 Patent and has alleged that "Velocity offers the NoteMagix M15 HHD with a hybrid hard drive configuration, listed as '750gb 7200rpm Mobile Hard Drive with 8 gb SSD Cache.'" (Amend. Compl. ¶ 2816.) But Velocity has never sold a single unit of this product. (Copeland Decl. at ¶ 12.) Samsung also sued Velocity, but not NVIDIA, for infringement of the '854 Patent and alleges infringement by the Velocity Vector Z25 that includes a computer case, such as the Velocity GX-2 Computer case (or chassis). (Amend. Compl. ¶¶ 72; 3068.) Velocity, however, neither designs nor manufactures the accused computer cases. It purchases the cases from a third-party, which is not located in Virginia. (Copeland Decl. at ¶ 13.) Indeed, Velocity lacks any information about the design or manufacture of the computer cases. That information is held by third parties.

As for the six patents asserted against both NVIDIA and Velocity, Samsung's basis for including Velocity is predicated on Velocity's use or sale of the specifically identified allegedly infringing NVIDIA products. Velocity has no information regarding the design or manufacture of any of the accused technology. "[The] interests of justice are not served by such blatant forum shopping."[4] *Telepharmacy Solutions*, 238 F. Supp. 2d at 744.

Samsung has brought a false advertising claim against NVIDIA under Virginia Code §§ 18.2-216 and 59.1-68.3. The basis of Samsung's claim is its allegation that NVIDIA advertises its Shield Tablet through its website operated out of California. (Amend. Compl. ¶ 3199.) Samsung has not alleged that the alleged false advertising occurred in Virginia or that it has harmed a Virginia resident. The fact that Samsung has brought a Virginia state law claim does

---

[4] When evaluating the potential for tactically inspired forum shopping, the Court may note that Samsung's lead counsel resides in the Northern District of California. *See* http://www.omm.com/darinsnyder/.

not trump transfer.  It is true that where a significant question of state law exists, the interest in having that conflict resolved by a court readily familiar with the substantive law applicable to that claim may be a consideration.  But this Court has previously held that state law claims cannot be the determinative factor in the resolution of transfer motions, particularly where "[t]he connection between this district and the case at hand is so tenuous and the balance of applicable factors weighs so heavily in favor of transfer." *Cognitronics Imaging Sys*, 83 F. Supp. 2d at 699 (transferring a case and the state law conspiracy claims brought by Plaintiff).  That is the situation here.

None of the other considerations for this factor affect the analysis:  both the Northern District of California and the Eastern District of Virginia are familiar with patent law, and both Samsung and NVIDIA continue to have the ability to join other parties if the case were to be transferred to the Northern District of California.[5]  Any premises that might have to be viewed would be located in the Northern District of California as that is where NVIDIA's operations are primarily located.  The interests of justice weigh in favor of a transfer.

## II.   THE INFRINGEMENT CLAIMS ASSERTED AGAINST VELOCITY AND NVIDIA SHOULD BE SEVERED AND STAYED AS AGAINST VELOCITY

### A.   Legal Standard

"The decision whether or not to stay a case pending in district court lies within the sound discretion of the court to control its docket." *Summer Rain v. Donning Co. Publishers, Inc.*, 964

---

[5]  While the Northern District of California may have a slower median time to trial than the Eastern District of Virginia, this is a "minor consideration when all other reasonable and logical factors would result in a transfer of venue." *GTE Wireless*, 71 F. Supp. 2d at 520 (rejecting plaintiff's argument that the action should stay in the Eastern District of Virginia simply because it would "likely proceed to trial faster" than in the Southern District of California); *Corry v. CFM Majestic, Inc.*, 16 F. Supp. 2d 660, 667 n.17 (E.D. Va. 1998) (fact that "cases generally proceed to trial faster in [the Eastern District of Virginia] than in Indiana … is not given great weight").

F.2d 1455, 1461 (4th Cir. 1992). This discretion "is incidental to the power inherent in every court to control … its docket with economy of time and effort for itself, for counsel, and for the litigants." *Landis*, 299 U.S. at 254. The appropriate use of such discretion "calls for the exercise of judgment which must weigh competing interests and maintain an even balance." *Steel Erectors, Inc. v. J.A. Jones Constr. Co.*, 865 F.2d 255, 1988 U.S. App. LEXIS 16385, at *2 (4th Cir. 1988) (quoting *Williford v. Armstrong World Indus.*, 715 F.2d 124, 127 (4th Cir. 1983)) (internal quotation marks omitted).

"The party seeking a stay must justify it by clear and convincing circumstances outweighing potential harm to the party against whom it is operative." *Williford*, 715 F.2d at 127. Specifically, a district court should consider three factors, consisting of: "(1) the interests of judicial economy; (2) hardship and equity to the moving party if the action is not stayed; [and] (3) potential prejudice to the non-moving party." *Sehler v. Prospect Mortg., LLC*, No. 1:13cv473, 2013 U.S. Dist. LEXIS 132123, at * 4 (E.D. Va. Sept. 16, 2013) (quoting *Johnson v. DePuv Orthopaedics, Inc.*, No. 3:12cv2274, 2012 U.S. Dist. LEXIS 141336, at *2 (D.S.C. 2012)). Some other important factors to consider are the "interests of persons not party to the civil litigation, the public interest, the danger of discovery abuse, [and] bad faith." *Avalonbay Cmtys., Inc. v. San Jose Water Conservation Corp.*, No. 1:07cv306, 2007 U.S. Dist. LEXIS 63773, at *4 (E.D. Va. Aug. 27, 2007) (citing *Afro-Lecon, Inc. v. United States*, 820 F.2d 1198, 1202-04 (Fed. Cir. 1987)); *In re Phillips, Beckwith & Hall*, 896 F. Supp. 553, 558 (E.D. Va. 1995)).

**B.    Severing And Staying The Case Against Velocity Is Appropriate**

Although all claims against NVIDIA should be transferred to the Northern District of California under section 1404(a), the same six patent infringement claims against Velocity as well as the two additional claims against just Velocity should be severed and stayed. It is

18

customary in patent infringement cases brought against both manufacturer and retailer or customer for courts to grant a motion to transfer the case against the manufacturer, and then to sever and stay the claims against the retailer or customer. *See, e.g.*, *Lugus IP v. Volvo Car Corp*, No. 3:11-cv-811-HEH, 2012 WL 1715983, at *22-23 (E.D. Va. May 15, 2012); *Brown Mfg. Corp. v. Alpha Lawn & Garden Equip., Inc.*, 219 F. Supp. 2d 705, 710 (E.D. Va. 2002) (granting motion to transfer patent infringement claims against manufacturer and marketer based in South Carolina, and staying claims against the distributor and retailers based in Maryland and Virginia); *LG Elecs. Inc. v. Advanced Creative Computer Corp.*, 131 F. Supp. 2d 804, 816-17 (E.D. Va. 2001) (granting motion to transfer patent infringement claims against Taiwanese manufacturer and California wholly-owned subsidiary, and staying claims against the California corporation's wholly-owned subsidiary based in New Jersey); *Corry*, 16 F. Supp. 2d at 666 (granting motion to transfer patent infringement claims against the manufacturing entities whose principal place of business was in Indiana, and staying case against the Virginia distributors).

Severance is appropriate where (1) the claim to be severed is only peripheral in nature, (2) adjudication of the remaining main claims would potentially dispose of the severed claim, and (3) transfer of the remaining claims is otherwise warranted under section 1404(a). *See Koh*, 250 F. Supp. 2d at 631-32. All of these requirements are met here.

First, the six overlapping claims of patent infringement against Velocity are peripheral in nature to the claims against NVIDIA because Velocity does not design, develop, or manufacture the accused technology.[6] (Copeland Decl. at ¶ 3.) Velocity is not a foundry and does not do any

---

[6] Samsung's claims against Velocity for the '054 Patent and the '854 Patent are also peripheral to the claims against NVIDIA and should be severed and stayed. As explained above, Velocity has never sold a single unit of the accused NoteMagix M15 HHD with a hybrid hard drive configuration. Also as detailed above, Velocity neither designs nor manufactures the accused computer cases relevant to the '854 Patent. And, in the last year, the accused products related to

semiconductor manufacturing or chip design. Velocity has no corporate connection to NVIDIA and has never made any direct purchases from NVIDIA. (*Id.* at ¶ 8.) Velocity purchases NVIDIA's products through distributors, primarily EVGA. (*Id.* at ¶¶ 8, 10.) Moreover, for at least the '158 Patent, Velocity has never sold a Tegra product of any kind. (*Id.* at ¶ 9.) Nor does Velocity have any knowledge of how a Tegra processor functions. (*Id.*) Samsung's claims against Velocity are peripheral to the claims against NVIDIA. *See Koh*, 250 F. Supp. 2d at 632 (E.D. Va. 2003) (finding patent infringement claim against retailer who only owned and operated one store was peripheral); *Brown Mfg. Corp.*, 219 F. Supp. 2d at 709 (finding infringement claims against distributer and retail sellers of allegedly infringing product were peripheral to claims "at the heart of th[e] case" against the manufacturer); *see also Mobil Oil Corp. v. W.R. Grace & Co.*, 334 F. Supp. 117, 123 (S.D. Tex. 1971) (holding that fact that main defendant's counsel also defends the peripheral defendant is a factor tending to prove peripheral involvement).

Second, adjudication of the six patent infringement claims against NVIDIA would dispose of the claims against Velocity because the Amended Complaint only identifies accused Velocity products that incorporate NVIDIA products. Thus, whether Velocity will be liable for patent infringement on those claims is likely dependent on whether NVIDIA, as the designer and manufacturer of the accused technologies, is liable for patent infringement. *See Koh*, 250 F. Supp. 2d at 632-33 (finding plaintiff's patent infringement claim against manufacturer could dispose of claim against the distributor-retailer).

---

the two patents asserted only against Velocity have generated less than ████ of revenue for Velocity. All of this demonstrates that these two claims are also peripheral to the main action against NVIDIA. *See Corry*, 16 F. Supp. 2d at 666 (holding that whether a defendant is peripheral depends upon "the degree of involvement each defendant has in the transactions which form the basis of the plaintiff's cause of action").

As for the third factor, transfer of the claims against NVIDIA is otherwise warranted under section 1404(a), as discussed above.

Accordingly, because (1) Plaintiffs' infringement claims against Velocity are peripheral to the claims against NVIDIA, (2) adjudication of the claims against NVIDIA would potentially dispose of the six-overlapping severed claims, and (3) transfer of the claims against NVIDIA is otherwise warranted, this Court should sever and stay the six overlapping infringement claims against Velocity.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their motion to transfer, sever, and stay, and grant any other relief the Court deems just.

NVIDIA CORPORATION
VELOCITY MICRO, INC.
D/B/A VELOCITY MICRO
VELOCITY HOLDINGS, LLC


By: _____/s/_____
            Of Counsel

Dabney J. Carr, IV, VSB No. 28679
dabney.carr@troutmansanders.com
Robert A. Angle, VSB No. 37691
robert.angle@troutmansanders.com
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, VA 23219
T: (804) 697-1200
F:  (804) 697-1339

Clement J. Naples (admitted *pro hac vice*)
clement.naples@lw.com
LATHAM & WATKINS LLP
885 Third Avenue
New York, NY 10022-4834
Tel: (212) 906-1200; Fax: (212) 751-4864

Counsel for NVIDIA Corporation
Velocity Micro, Inc. d/b/a Velocity Micro
and Velocity Holdings, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of January, 2015, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Robert W. McFarland
rmcfarland@mcguirewoods.com
Sarah K. McConaughy
smcconaughy@mcguriewoods.com
McGuire Woods LLP
101 W. Main Street, Suite 9000
Norfolk, VA 23510

Sean F. Murphy
sfmurphy@mcguirewoods.com
McGuireWoods LLP
1750 Tysons Boulevard, Suite 1800
Tysons Corner, VA 22102-4215

Darin W. Snyder
dsnyder@omm.com
Alexander B. Parker
aparker@omm.com
Elysa Q. Wan
ewan@omm.com
O'Melveny & Myers LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111

Vision L. Winter
vwinter@omm.com
Ryan K. Yagura
ryagura@omm.com
Michael A. Koplow
O'Melveny & Myers LLP
400 South Hope Street, 18th Floor
Los Angeles, CA 90071

Mishima Alam
malam@omm.com
O'Melveny & Myers LLP
1625 Eye Street NW
Washington, DC 20006

Counsel for Samsung Electronics Co., Ltd. and
Samsung Electronics America, Inc.

               /s/
Dabney J. Carr, IV (VSB No. 28679)
dabney.carr@troutmansanders.com
Robert A. Angle (VSB No. 37691)
robert.angle@troutmansanders.com
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, VA 23219
Telephone: (804) 697-1200
Facsimile:  (804) 697-1339

23